**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL WILLIAMS,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-5920** |
| | : | |
| **JOSEPH TERRA, *et al.*,** | : | |
| **Defendants.** | : | |

# MEMORANDUM

**BEETLESTONE, C.J.** **SEPTEMBER 18,2026**

Plaintiff Daniel Williams, a transgendered inmate[1] at SCI Phoenix, filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials and medical staff failed to protect her from sexual assault by other inmates. The remaining two Defendants, Superintendent Joseph Terra and prison psychologist PSS Stickney, have moved to dismiss the claims asserted against them.[2] For the reasons that follow, the Court will grant the Motion in part and deny it in part. The Eighth Amendment failure to protect claims will be dismissed against Stickney but not against Terra. The due process claims will also be dismissed. Williams may choose to file a second amended complaint or proceed with her Eighth Amendment claims against Terra.

---

[1] Williams refers to herself as "trans and/or gender non-conforming" and uses she/her pronouns. (*See* ECF No. 88.)

[2] Williams named additional Defendants in her original Complaint, such as the United States of America, the Pennsylvania Department of Corrections, Wellpath, J. Yodis, Commander Lt. J. McCafferty, Nesmith, and CRNP Floyd. However, Williams abandoned her claims against these Defendants by not naming them in her Amended Complaint. (*See* ECF Nos. 71, 74.) Dr. Letizio was also named in the Amended Complaint. The Court dismissed the claims against Dr. Letizio for failure to prosecute. (*See* ECF No. 87.)

## I. FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[3]

Beginning in June of 2024, Williams began telling prison officials that she was vulnerable and wanted to be housed in a single cell for safety reasons. (Am. Compl. ¶¶ 9-11.) She describes herself as a "slim indigenous woman." (*Id.* ¶ 18.) When she was admitted to the restricted housing unit ("RHU"), she advised Stickney and Lieutenant McCafferty that she did not want any cellmates. (*Id.* ¶ 9.) She also told a hearing examiner and the Program Review Committee. (*Id.* ¶ 10-11.) Despite her request to be placed in a single cell, on July 3, 2024, primarily due to overcrowding at the prison, Superintendent Joseph Terra placed her with a cellmate. (*Id.* ¶¶ 12, 65.) On July 9, 2024, Williams was "brutally and physically and sexually battered by her cellmate." (*Id.* ¶ 13.) Williams immediately reported the assault. (*Id.* ¶ 14.)

Despite awareness of the assault, Terra nevertheless placed Williams with three other inmates, one of whom repeatedly raped her "over and over again, day and night, from approximately July 25, 2024 until August 18, 2024." (*Id.* ¶¶ 15, 16.) The inmate who assaulted Williams was a convicted sex offender and was well known with the Pennsylvania Department of Corrections ("DOC") for violence and mental health problems. (*Id.* ¶ 16.) The multiweek victimization caused Williams to suffer from physical and emotional trauma. (*Id.* ¶ 97.) During this time, her "pleas for help would go ignored by staff." (*Id.* ¶ 25.)

Williams asserts that prior to and after the sexual assaults, she made many "sick calls, request slips, and grievances" about "how susceptive (vulnerable) she was to rape by men." (*Id.* ¶ 43.) She met with Stickney on at least two unspecified occasions, during which she spoke

[3] Unless otherwise noted, the factual allegations are taken from the Amended Complaint, including the exhibits attached thereto (ECF No. 71). The Court adopts the sequential pagination supplied by the CM/ECF docketing system. The Court will recount only those allegations that are relevant for resolving the pending Motion to Dismiss.

about the sexual abuse that she had been experiencing in the RHU and that she felt like she was being "punished in horrendous ways." (*Id.* ¶ 45.) Stickney allegedly responded, "Why are you telling me this?" and "Oh, it's not that bad." (*Id.*) Williams further alleges that Terra and other DOC officials "knew [she] was a vulnerable inmate" and that "she had been victimized prior." (*Id.* ¶ 63.) She had "repeatedly asked" Terra and others "to be housed alone." (*Id.*) Terra also allegedly denied Williams due process by not allowing SCI Phoenix's "inmate grievance and misconduct process to be fully available" or by failing to "offer a remedy" to her. (*Id.* ¶ 98.)

Based on these allegations, Williams asserts Eighth Amendment failure to protect claims and Fourteenth Amendment due process claims against Defendants. For relief, Williams seeks money damages, a declaration that her rights were violated, a preliminary and permanent injunction ordering Defendants to "stop their theft of funds of account and cease their human trafficking" of Williams, release her from prison,[4] house her in a single cell or in a women's facility, and provide her medical care by an outside physician.[5] (Am. Compl. ¶¶ 102-107.)

[4] Williams's request to be released from custody cannot be granted in a civil action, such as this one, brought pursuant to 42 U.S.C. § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973) (stating that when a prisoner "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus"); *see also Jaffery v. Atl. Cnty. Prosecutor's Office*, 695 F. App'x 38, 41-42 (3d Cir. 2017) (*per curiam*) ("[T]o the extent Jaffery seeks dismissal of the charges against him as a result of constitutional violations, such relief is only available through a writ of habeas corpus."); *Duran v. Weeks*, 399 F. App'x 756, 759 (3d Cir. 2010) (*per curiam*) ("[T]o the extent that Duran is seeking dismissal of the charges against him as a result of constitutional violations, he is essentially asking for relief only available through habeas corpus."). Williams's request for declaratory relief is also improper since it merely seeks to adjudicate past conduct. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) (noting that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct," and is also not "meant simply to proclaim that one party is liable to another").

[5] Williams also seeks decarceration for other women and minorities. (Am. Compl. ¶ 108.) However, Williams, as a *pro se* litigant, may not assert claims on behalf of others. *See Murray on behalf of Purnell v. City of Philadelphia*, 901 F.3d 169, 170 (3d Cir. 2018)

The Court previously granted Williams leave to proceed *in forma pauperis* and directed service of her Amended Complaint.[6] (ECF No. 74.) Terra and Stickney have now moved to dismiss the Amended Complaint, contending that (1) all official capacity claims are barred by Eleventh Amendment immunity, and that (2) Williams fails to state plausible Eighth and Fourteenth Amendment claims. (*See* ECF No. 84.) After Williams failed to respond to Defendants' Motion, the Court issued an Order directing Williams to show cause why her claims against Stickney and Terra should not be dismissed for failure to prosecute. (ECF No. 91.) Williams eventually responded to the Motion. (ECF No. 92.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss under Rule 12(b)(6), the Court

---

("Although an individual may represent herself or himself *pro se*, a non-attorney may not represent other parties in federal court."); *Lewis v. City of Trenton Police Dep't*, 175 F. App'x 552, 554 (3d Cir. 2006) (per curiam) ("Lewis, who is proceeding *pro se*, may not represent a putative class of prisoners.").

[6] Williams originally filed her Complaint in the United States District Court for the Western District of Pennsylvania, which transferred Williams's case to this Court pursuant to 28 U.S.C. § 1404(a). (*See* ECF Nos. 21, 23.) This Court granted Williams's request to file an amended complaint. (ECF No. 70.) The Amended Complaint (ECF No. 72) is the operative pleading in this case.

Prior to Williams filing the Amended Complaint, on January 27, 2025, Defendant Wellpath filed a Suggestion of Bankruptcy and Notice of Stay in light of the Voluntary Petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (Case No. 24-90533), filed by Wellpath Holdings, Inc. (ECF No. 41.) On May 28, 2025, Wellpath advised that a Plan of Organization for Wellpath Holding, Inc. had been confirmed. (ECF No. 69.)

must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp*., 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). It is the defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (same). To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (citation modified), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is an action under 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).

### A. Eighth Amendment Failure to Protect Claim

Terra and Stickney argue that Williams fails to assert plausible Eighth Amendment failure to protect claims against them. The Eighth Amendment, made applicable to the individual states through the Fourteenth Amendment, prohibits states from inflicting "cruel and unusual punishments" on those convicted of crimes. *See Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981). Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates. *See Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation and citation omitted). Courts have found that prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Id*. at 833 (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" *Id*. at 834 (quoting *Rhodes*, 452 U.S. at 347).

For a failure to protect claim against a prison official to be plausible, a plaintiff must

allege that: (1) the conditions in which she was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm. *See Farmer*, 511 U.S. at 834; *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997); *see also Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (*per curiam*). Deliberate indifference in the context of a failure to protect claim is a subjective standard that requires the plaintiff to allege plausibly that the defendant prison officials "must actually [have been] aware of the existence of the excessive risk; it is not sufficient that [prison officials] should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001). "However, subjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk." *Id*. (citing *Farmer*, 511 U.S. at 844).

Turning first to Williams's claim against Stickney, Williams alleges that prior to the assaults, she told Stickney, who served as a psychologist at the RHU, that she "didn't want any cellmates." (Am. Compl. ¶¶ 6, 9.) During other unspecified meetings, when Williams confided to Stickney that she felt as though the "sexual abuse" she endured at the RHU was punishment, Stickney allegedly responded, "Why are you telling me this?" and "Oh, it's not that bad." (*Id*. ¶ 45.) These allegations—although serious—do not support a plausible inference that Stickney was aware of a substantial risk that Williams would be subjected to sexual assaults by inmates prior to the assaults occurring. The conversation between Williams and Stickney prior to the July and August 2024 assaults, at best, supports an inference that Williams wanted a single cell, not that Stickney was aware that Williams had a particular vulnerability to sexual assault. Although Williams later shared with Stickney that she was raped, Williams does not allege when these conversations with Stickney took place, and what exactly she shared with Stickney. Thus,

the allegations do not support a plausible inference that Stickney was aware of the substantial risk to Williams's safety *prior to* any assault that she endured.

To the extent that Williams alleges that Stickney's awareness of her gender identity was enough to establish deliberate indifference to a vulnerability to sexual assault, the claim is not supported by the law. *See Green v. Hooks*, 798 F. App'x 411, 424 (11th Cir. 2020) (rejecting on summary judgment the contention that being transgendered in a prison facility provided officials notice that the plaintiff was subject to a substantial risk of serious danger); *Cox v. Nobles*, No. 19-031, 2020 WL 1541698, at *6 (S.D. Ga. Mar. 31, 2020) ("[T]he mere fact that Plaintiff is transgender is insufficient to show Moving Defendants are liable under the Eighth Amendment for any assault Plaintiff experienced."), *aff'd*, 15 F.4th 1350 (11th Cir. 2021). Accordingly, Williams's claims against Stickney will be dismissed without prejudice. Williams may amend her claims against Stickney if she can allege facts to cure the defects the Court has noted.

Contrary to Defendants' framing of them as merely "generalized" (*see* ECF No. 84 at 10), Williams's deliberate indifference allegations against Superintendent Terra are substantial. She states that beginning in 2024 she began telling undisclosed prison officials that she was vulnerable to rape and wanted a single cell. Despite this request, Terra placed her with a cellmate on July 3, 2024, and less than a week later, she was sexually assaulted by her cellmate. She further alleges that she immediately reported the assault and that Terra, as the superintendent, was aware that it happened. Nevertheless, less than three weeks later, on July 25, 2024, Terra placed her with a different cellmate, who was a convicted sex offender and "well known to the PADOC for violence [and] mental health problems." (*Id.* ¶ 16.) Williams was repeatedly raped by this second cellmate. Based on these allegations, it is plausible to infer that prior to the assaults on Williams by the second cellmate, Terra was aware of Williams's was

aware of her rape by the first cellmate and aware of her vulnerability to rape and, nevertheless, acted with deliberate indifference to that substantial risk of harm by placing her with a known sex offender with a proclivity to violence and mental health issues. Accordingly, Defendants' Motion to Dismiss the claims against Terra will be denied.[7]

**B. Due Process Claims**

Defendants also seek dismissal of Williams's due process claim asserted against Terra. The due process clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty or property without due process of law." U.S. Const. amend. XIV. "To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) [s]he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to [her] did not provide due process of law." *King v. City of Philadelphia*, 654 F. App'x 107, 111 (3d Cir. 2016) (*per curiam*) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006)). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation modified); *see also Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015) ("The essence of a procedural due process claim, of course, is notice and an opportunity to be heard.").

The basis for Williams's due process claim is not entirely clear. Williams alleges that she was denied due process when Terra did not allow the "administrative remedy via the inmate grievance and misconduct process to be fully available" and failed "to correct the misconducts."

[7] Defendants also contend that Williams failed to allege a supervisory liability claim against Terra. Because the Court concludes that Williams states a plausible direct claim against Terra based on Terra's personal involvement in the alleged constitutional harm, it need not address Defendants' arguments regarding supervisory liability.

(Am. Compl. ¶ 98.) To the extent Williams's due process claim is based on how her grievances were handled, the claims must be dismissed as not plausible because a prisoner has no constitutional right to a grievance process. *See Gerholt v. Wetzel*, 858 F. App'x 32, 34 (3d Cir. 2021) (*per curiam*); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) (*per curiam*) (explaining that "[i]nmates do not have a constitutionally protected right to the prison grievance process" and that "a state grievance procedure does not confer any substantive constitutional right upon prison inmates" (internal quotations and citations omitted)). Moreover, Williams has not alleged that she was deprived of a liberty interest nor that the process available to her was constitutionally insufficient. She references an alleged failure to correct "misconducts" but includes no facts about these alleged misconducts, including what they were, when she received them, and how they relate to an alleged violation of her due process rights. Williams's conclusory allegations that her due process rights were violated do not plausibly assert a Fourteenth Amendment claim. *Iqbal*, 556 U.S. at 678; *Coulter v. Forrest*, 606 F. App'x 634, 636 (3d Cir. 2015) (*per curiam*) (affirming dismissal of due process claims where the plaintiff "set forth only conclusory allegations" and thus "fails to meet the pleading standard"). Accordingly, Williams fails to allege plausible Fourteenth Amendment due process claims.

**C. Official Capacity Claims**

Defendants also seek to dismiss all official capacity claims asserted against them, arguing that the claims are barred by Eleventh Amendment immunity. Generally, the Eleventh Amendment bars suits against a state and its agencies in federal court when the state has not waived that immunity, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989), and the Commonwealth of Pennsylvania has not waived that immunity for claims under § 1983, *see* 42 Pa. Cons. Stat. § 8521(b). However, the Eleventh Amendment does not bar official capacity

claims against state officials where the plaintiff seeks prospective injunctive relief to stop an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123 (1908); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002). Courts reason that injunctions against state officials actively violating federal laws are "necessary to vindicate the federal interest in assuring the supremacy of that law," despite the Constitution's prohibition against suits against the state. *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985)); *see also Iles v. de Jongh*, 638 F.3d 169, 177 (3d Cir. 2011) ("[A] state employee may be sued in his official capacity only for prospective injunctive relief, because official-capacity actions for prospective relief are not treated as actions against the State." (internal quotations omitted)).

Williams seeks, among other things, prospective injunctive relief in the form of single-cell status and transfer to a women's facility. (*See* Am. Compl. ¶¶ 105-106.) Defendants have not addressed whether these claims properly fall within the *Ex Parte Young* exception. And, at this early stage in the litigation, the Court is not prepared to dismiss Williams's claims for injunctive relief without briefing or discovery. Accordingly, Defendants' Motion to Dismiss the official capacity claims will be denied.

## IV. CONCLUSION

For the foregoing reasons, Stickney and Terra's Motion to Dismiss will be granted in part and denied in part. The Motion is denied as to the Eighth Amendment official and individual capacity claims asserted against Terra, and is granted in all other respects. Williams's Fourteenth Amendment due process claims, and Eighth Amendment claims asserted against Stickney will be dismissed without prejudice. Williams may file a second amended complaint or proceed to discovery on her claims against Terra.

An Order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

**WENDY BEETLESTONE, C.J.**